UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DARWIN MOORE,

       Plaintiff,                                Civil Action No.
                                                  06-CV-12223-DT

vs.

                                              HON. BERNARD A. FRIEDMAN

UNITED PARCEL SERVICE,

       Defendant.

_____/

**OPINION AND ORDER DENYING**
**DEFENDANT'S MOTION TO DISMISS (DKT. NO. 11)**

This matter is presently before the Court on Defendant's Motion to Dismiss. Darwin Moore ("Plaintiff") alleges violations of the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.* Plaintiff claims that he gave a doctor's note to his employer—the United Parcel Service ("Defendant")—but Defendant refused to let him work on a reduced schedule and refused to provide FMLA forms to him. In addition, Plaintiff asserts that Defendant retaliated against him for taking time off from work and for filing a complaint alleging interference with his FMLA rights. Defendant denies the allegations.

The Court has reviewed the pleadings, motion, response, reply, and evidentiary documents in this case. Pursuant to E.D. Mich. LR 7.1(e)(2), the Court shall decide the motion without oral argument. The Court will deny Defendant's Motion to Dismiss.

A.      **FACTUAL BACKGROUND**

Plaintiff has been a package driver for Defendant since 1988. He is still employed by Defendant.

          1.     *The Collective Bargaining Agreement ("CBA")*

Plaintiff is a member of the union, and his employment is subject to a collective bargaining agreement ("CBA") between the union and Defendant.  The relevant portions of the CBA are as follows:

> Section 6.  Family and Medical Leave Act (FMLA)
>
> All employees who have worked for the Company for a minimum of twelve (12) months and worked at least 1250 hours during the past twelve (12) months are eligible for unpaid leave as set forth in the Family and Medical Leave Act of 1993.
>
> Additionally, any employee not covered above, that has worked for the Company for a minimum of thirty-six (36) months and accrued at least 625 paid hours during the past twelve (12) months is eligible for unpaid leave as set forth below, except that the amount of leave allowed will be computed at one half (½) of the time provided by the FMLA.
>
> Eligible employees are entitled up to a total of 12/6 weeks of unpaid leave during any twelve (12) month period for the following reasons:
> 1.  Birth of a child;
> 2.  Adoption, or placement for foster care;
> 3.  To care for a spouse, child, or parent of employee due to a serious health condition;
> 4.  A serious health condition of the employee.
>
> The employee's seniority rights shall continue as if the employee had not taken leave under this section, and the Employer will maintain health insurance coverage during the period of the leave.
>
> The Employer may require the employee to substitute accrued paid vacation or other paid leave for part of the 12/6 week leave period.
>
> The employee is required to provide the Employer with at least thirty (30) days advance notice before FMLA leave begins if the need for leave is foreseeable.  If the leave is not foreseeable, the employee is required to give notice as soon as practicable.  The Employer has the right to require medical certification of a need for leave under this Act.  In addition, the Employer has the right to require a second (2nd) opinion at the Employer's expense.
>
> The provisions of this section are in response to the Federal Act

2

and shall not supersede any state or local law, which provides for
greater employee rights.

(Def.'s Mot. to Dismiss, Ex. 3.)  This contractual language closely tracks the statutory language
of the FMLA.  In fact, it may even provide slightly more coverage than the FMLA.

The CBA also provides for a mandatory grievance-and-arbitration process to resolve
disputes.  The CBA states that "[a]ll grievances and/or questions of interpretation arising under
the provisions of this National Master Agreement ["CBA"] shall be resolved in the following
manner."  (Id. Ex. 4.)  The CBA then presents the steps involved in the grievance-and-
arbitration process.  The CBA defines a "grievance" as "any controversy, complaint,
misunderstanding, or dispute arising as to the interpretation, application or observance of any of
the provisions of this Agreement or any Supplement, Rider or Addendum hereto."  (Id. Ex. 5.)
The CBA further states that the resolution of grievances and arbitration shall be "final and
binding on both parties."  (Id.)

### 2.   *Plaintiff's Allegations*

It seems that in May 2003, Plaintiff provided a doctor's note to Defendant.  Plaintiff
explains that the doctor's note stated that he could only work eight hours per day, in order for
his doctor to determine if the stress from his working overtime was exacerbating his enlarged
pancreas.  Plaintiff states that his regular workdays often included overtime hours.

According to Plaintiff, he requested FMLA forms in mid-May 2003.  He stated that he
needed the forms in order to establish his claim for reduced-leave benefits under the FMLA.
Plaintiff states that Defendant refused to provide the FMLA forms to him.  Moreover, Plaintiff

states that Defendant refused to let him work unless he worked overtime hours.[1]  As such, Plaintiff states that he had no choice but to not report to work.  Thus, from May 15, 2003 until June 16, 2003, Plaintiff did not work for Defendant.  Defendant states that Plaintiff filed a grievance, but it was denied by the grievance committee.

On June 7, 2004, Plaintiff filed a complaint—alleging FMLA violations against Defendant—with the United States Department of Labor.

On July 9, 2004, Defendant terminated Plaintiff's employment.  Defendant explains that the termination was the result of Plaintiff's inappropriate and unprofessional conduct at a customer's place of business.  Plaintiff filed a grievance with Defendant.  Through the grievance process, Defendant agreed to reduce Plaintiff's termination to a suspension without pay.

On August 2, 2004, Plaintiff returned to work for Defendant.

## B.  PROCEDURAL HISTORY

Plaintiff filed his original Complaint on May 15, 2006.  He then filed an Amended Complaint on October 25, 2006, in order to add a second allegation of an FMLA violation.  Defendant filed an Answer.

On November 21, 2006, Defendant filed its Motion to Dismiss.  After a stipulated extension of time, Plaintiff filed a Response on December 22, 2006.  Defendant filed a Reply on January 5, 2007.

## II.  DEFENDANT'S MOTION TO DISMISS PURSUANT TO RULE 12(B)(6) OR

---

[1]Defendant denies that it refused to provide the FMLA forms or that it refused to let him work unless he worked overtime hours.

4

**RULE 56(C)**[2]

Defendant argues that the Court should dismiss Plaintiff's cause of action because the CBA is Plaintiff's exclusive remedy, as the CBA contains a "clear and unmistakable" waiver of an employee's right to pursue an FMLA claim in federal court.  On the other hand, Plaintiff argues that the CBA contains no "clear and mistakable" waiver.  Moreover, Plaintiff argues that, even if the CBA did contain such a waiver, an individual's right to pursue a federal statutory cause of action under the FMLA cannot be collectively waived by the union in a CBA.

**A.   *ALEXANDER v. GARDNER-DENVER CO.* (U.S. SUPREME COURT, 1974)**

In Alexander v. Gardner-Denver Co., the United States Supreme Court held that an employee's federal statutory right under Title VII of the Civil Rights Act is not precluded because the plaintiff previously submitted his claim to final arbitration under a nondiscrimination clause of a collective-bargaining agreement.[3]  415 U.S. 36 (1974).  The Supreme Court distinguished *contractual rights* created by a collective-bargaining agreement and *statutory rights* created by the federal government.  The Supreme Court explained that unions can "waive certain statutory rights related to collective activity, such as the right to strike"; however, unions cannot waive a Title VII right because it is an "individual's right to equal employment opportunities."  Gardner-Denver, 415 U.S. at 51.  As such, the Court ruled that "there can be no prospective waiver of an employee's rights under Title VII."  Id.

The Supreme Court explained that federal statutory rights are independent from an

---

[2]Although Defendant states that his Motion to Dismiss is based on Rules 12(b)(6) and 56(c), Defendant also asserts that this Court lacks subject matter jurisdiction to hear this case because the grievance procedure is the exclusive remedy for Plaintiff's FMLA claims.

[3]In Gardner-Denver, a black man alleged that his discharge was the result of racial discrimination.

5

employee's contractual rights.   In other words, the "submission of a claim to one forum does

not preclude a later submission to another." <u>Id.</u> at 47-48.  The Supreme Court firmly explained:

> In submitting his grievance to arbitration, an employee seeks to
> vindicate his contractual right under a collective-bargaining
> agreement.  By contrast, in filing a lawsuit under Title VII, an
> employee asserts independent statutory rights accorded by
> Congress.  The distinctly separate nature of these contractual and
> statutory rights is not vitiated merely because both were violated as
> a result of the same factual occurrence.  And certainly no
> inconsistency results from permitting both rights to be enforced in
> their respectively appropriate forums.

<u>Id.</u> at 49-50.  Thus, the employee was able to pursue both his contractual rights and his statutory

rights because the "rights have legally independent origins and are equally available to the

aggrieved employee." <u>Id.</u> at 52.

In addition, the Supreme Court based its finding on the legislative intent behind Title VII.

The Supreme Court stated that "[t]here is no suggestion in the statutory scheme that a prior

arbitral decision either forecloses an individual's right to sue or divests federal courts of

jurisdiction." <u>Id.</u> at 47.  The Supreme Court further stated that the "purpose and procedures of

Title VII indicate that Congress intended federal courts to exercise final responsibility for

enforcement of Title VII; deferral to arbitral decisions would be inconsistent with that goal." <u>Id.</u>

at 56.

The Supreme Court also explained that arbitration and federal court are different forums,

with different rules, and different powers.  The Supreme Court stated:

> Arbitral procedures, while well suited to the resolution of
> contractual disputes, make arbitration a comparatively
> inappropriate forum for the final resolution of rights created by
> Title VII.  This conclusion rests first on the special role of the
> arbitrator, whose task is to effectuate the intent of the parties [and
> the CBA's provisions] rather than the requirements of enacted

6

legislation.[4]

Id. at 56-57.

In sum, the Supreme Court ruled that the plaintiff could pursue both his contractual nondiscrimination rights under the collective-bargaining agreement by proceeding through the grievance/arbitration process, *and* he could pursue his federal statutory cause of action by filing a Title VII claim in federal court.

## B. *GILMER v. INTERSTATE/JOHNSON LANE CORP.* (U.S. SUPREME COURT, 1991)

In Gilmer v. Interstate/Johnson Lane Corp., the United States Supreme Court ruled differently than it had in Gardner-Denver. The Gilmer Court faced a federal claim under the Age Discrimination In Employment Act ("ADEA"). The Supreme Court now ruled that an employee could be compelled to bring his discrimination claim under the collective-bargaining agreement's compulsory grievance/arbitration procedures and could be precluded from bringing a federal cause of action.[5] 500 U.S. 20 (1991). The Supreme Court focused on the strong federal policy in favor of arbitration, under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq*. The Supreme Court explained that the FAA's "purpose was to reverse the longstanding judicial hostility to arbitration agreements . . . and to place arbitration agreements upon the same footing as other contracts." Gilmer, 500 U.S. at 24. As such, the Supreme Court stated that "statutory claims may be the subject of an arbitration agreement, enforceable pursuant to the FAA." Id. at 26. The Supreme Court reasoned that "[b]y agreeing to arbitrate a statutory claim, a party does

---

[4]The Supreme Court did note, though, that a federal court could consider the arbitral decision as evidence and accord it such weight as is appropriate.

[5]In Gilmer, a securities representative alleged that he was terminated because of his age.

7

not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum."  Id. (quoting Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 628 (1985)).

The Supreme Court sought to reconcile its finding in Gilmer with its previous concerns in Gardner-Denver.  The Supreme Court explained:

> It is true that arbitration focuses on specific disputes between the parties involved.  The same can be said, however, of judicial resolution of claims.  Both of these dispute resolution mechanisms nevertheless also can further broader social purposes.  The Sherman Act, the Securities Exchange Act of 1934, RICO, and the Securities Act of 1933 all are designed to advance important public policies, but, as noted above, claims under those statutes are appropriate for arbitration. "[S]o long as the prospective litigant effectively may vindicate [his or her] statutory cause of action in the arbitral forum, the statute will continue to serve both its remedial and deterrent function."

Id. at 27-28 (quoting Mitsubishi Motors Corp., 473 U.S. at 637).  Thus, as long as an employee has waived his statutory rights in a collective-bargaining agreement, the employee can be precluded from bringing a federal cause of action, and he can be compelled to file his claim under the collective-bargaining agreement's grievance-and-arbitration procedures.

However, there is one very important distinction between Gilmer and Gardner-Denver.  In Gardner-Denver, the parties were subject to a collective-bargaining agreement.  However, in Gilmer, the parties were only subject to a securities registration application.[6]  The Gilmer Court directly addressed the distinction, by stating:

> [B]ecause the arbitration in those cases [i.e. Gardner-Denver] occurred in the context of a collective-bargaining agreement, the claimants there were represented by their unions in the arbitration

---

[6]A securities registration application is a contract with the securities exchanges, not with the defendant.

> proceedings.  An important concern therefore was the tension
> between collective representation and individual statutory rights, a
> concern not applicable to the present case.

Id. at 35.  The Supreme Court further explained that in cases involving collective-bargaining

agreements, the Court has already "noted, as in Gardner-Denver, the difference between

contractual rights under a collective-bargaining agreement and individual statutory rights, the

potential disparity in interests between a union and an employee, and the limited authority and

power of labor arbitrators."  Id.  Thus, the absence of a collective-bargaining agreement in

Gilmer seems to be a highly significant factor in the Supreme Court's analysis.

Moreover, the Gilmer Court expressly stated that it was not addressing Section 1 of the

FAA.  Section 1 states that "nothing herein contained shall apply to contracts of employment of

seamen, railroad employees, or any other class of workers engaged in foreign or interstate

commerce."  9 U.S.C. § 1 (1999).  The Gilmer Court explained that a securities registration

application was not a "contract of employment" and thus "it would be inappropriate to address

the scope of the § 1 exclusion because the arbitration clause being enforced here is not contained

in a contract of employment."[7]  Gilmer, 500 U.S. at 25.  Thus, Gilmer can be distinguished from

Gardner-Denver because there was no collective-bargaining agreement in Gilmer, but there was

a collective-bargaining agreement in Gardner-Denver.

## C.    SIXTH CIRCUIT AND EASTERN DISTRICT OF MICHIGAN CASES

In Willis v. Dean Witter Reynolds, Inc., the Sixth Circuit ruled that an employee's sex-

discrimination claims must be submitted to arbitration based on the arbitration clause in the

---

[7]It should be noted that the Sixth Circuit and Eastern District of Michigan have ruled that a collective-bargaining agreement is clearly a "contract of employment," and therefore it is excluded from the FAA's liberal arbitration policy, as explained in Section C.

9

securities registration application.  948 F.2d 305 (6th Cir. 1991).  In so ruling, the Sixth Circuit explained that Gilmer did not overrule Gardner-Denver, but that Gilmer instead only "reject[ed] a reading of Alexander [Gardner-Denver] as prohibiting the arbitration of employment discrimination claims."  Id. at 308.  The Sixth Circuit explained that Gilmer merely "limited . . . the scope of Alexander [Gardner-Denver] to circumstances in which the agreement to arbitrate did not include a waiver of statutory rights independent of the collective-bargaining agreement."  Id. at 309.  Thus, the Sixth Circuit found that an employee can be precluded from asserting an individual statutory right in federal court if that employee himself "agrees to submit all statutory claims to arbitration."  Id.

In addition, the Willis court stated that the exclusionary clause of Section 1 of the FAA did not apply to collective-bargaining agreements.  As stated above, Section 1 excludes "contracts for employment" from the FAA.  The Sixth Circuit explained that "this court has held that collective bargaining agreements are 'contracts of employment' and therefore outside the scope of the FAA."  Id. at 311.  In finding that the arbitration clause is enforceable in this case—which involved a securities registration application—the Sixth Circuit relied on the fact that the Gilmer Court "specifically found that the Securities Registration Form containing the arbitration provision at issue in that case, as in the case before us, was not a 'contract for employment.'"  Id. at 312.  Thus, the FAA's liberal policy for arbitration applied to Willis, as the case did *not* involve a collective-bargaining agreement.

The Eastern District of Michigan has strongly held that an individual's statutory claims are not subject to compulsory arbitration under a collective bargaining agreement.  In Jackson v. Quanex Corp., an employee filed a federal cause of action for racial harassment under 42 U.S.C. § 1981.  889 F. Supp. 1007 (E.D. Mich. 1995).  In finding that the federal cause of action was

not precluded, the court stated that "[a]fter <u>Gilmer</u>, the Court of Appeals for the Sixth Circuit explicitly stated that 'collective bargaining agreements are 'contracts of employment' and therefore outside the scope of the FAA.'" <u>Id.</u> at 1010 (quoting <u>Willis</u>, 948 F.2d at 311). In distinguishing many cases where courts have found that Title VII claims are subject to compulsory arbitration under the FAA, the court stated:

> [N]one of the cases . . . are in the context of an arbitration clause in a CBA. Rather, . . . all involve plaintiffs who signed individual agreements compelling arbitration, particularly in the context of registering to broker securities. None of these cases, nor <u>Gilmer</u>, compel arbitration of civil rights claims under the FAA pursuant to an arbitration clause in a CBA.

<u>Id.</u> at 1011 (citations omitted). Thus, the Eastern District found that <u>Gardner-Denver</u> remained "squarely on point" because <u>Gardner-Denver</u>, like the case before the court in <u>Quanex</u>, involved a collective-bargaining agreement. <u>Id.</u>

In reaching its conclusion, the Eastern District referred to the unique nature of labor relations, where employees are covered by contracts that have been negotiated by their union and their employer. The court stated:

> Under <u>Gardner-Denver</u>, union members may not be compelled to submit constitutional and statutory civil rights claims to the labor arbitration process. This result is appropriate even after <u>Gilmer</u> because of the unique character of labor arbitration. . . . In short, the labor arbitration process places significantly less emphasis on the rights of individual employees than do the civil rights statutes, rendering mandatory labor arbitration of civil rights claims inappropriate. . . . Plaintiffs are not required to arbitrate their statutory claims under the terms of the CBA. . . . CBA's implicate a set of concerns distinct to labor arbitration and not involved in individual employment contracts.

<u>Id.</u> (citations and footnote omitted). Thus, the individual plaintiff's federal statutory claims were not subject to the compulsory arbitration clause of the collective-bargaining agreement.

11

D.    **FOURTH CIRCUIT—*AUSTIN v. OWENS-BROCKWAY GLASS CONTAINER, INC.***

The Fourth Circuit seems to stand alone in finding that a collective-bargaining agreement's arbitration clause creates compulsory arbitration of a plaintiff's federal claims.  In Austin v. Owens-Brockway Glass Container, Inc., a plaintiff sought to file federal claims based on Title VII and the American with Disabilities Act ("ADA").[8]  78 F.3d 875 (4th Cir. 1996).  In finding that the plaintiff could not assert federal statutory causes of action, the Fourth Circuit stated that "the arbitration provisions in the collective bargaining agreement are obligatory and not permissive."  Id. at 879.  The Fourth Circuit did not rely on the FAA, but instead on "the federal labor law policy encouraging arbitration of labor disputes as expressed in the Steelworkers Trilogy."  Id. at 883 n.2.  In addition, the Fourth Circuit points to language in Title VII and the ADA showing that the "use of alternative means of dispute resolution . . . is encouraged."  Id. at 881.  Also, the Fourth Circuit explains that "there is no inherent conflict between arbitration and the underlying purposes of the [ADA] or Title VII."  Id. at 882.  Lastly, the Fourth Circuit stresses that the plaintiff had entered a voluntary agreement and that she should be bound by that agreement:

> Our case, like Gilmer, involves the issue of the enforceability of an agreement to arbitrate statutory claims.  This case arises in the context of a collective bargaining agreement so there may be concern for any tension between collective representation and statutory rights.  As we [found], Miss Austin is a party to a voluntary agreement which has explicitly agreed to the arbitration of her statutory complaints.  That should be enforced.
> . . . .
> Whether the dispute arises under a contract of employment growing out of [a] securities registration application, a simple employment contract, or a collective bargaining agreement, an

---

[8]It should be noted that the Fourth Circuit was divided in its Austin decision.

12

> agreement has yet been made to arbitrate the dispute. So long as
> the agreement is voluntary, it is valid, and we are of [the] opinion
> it should be enforced.
> . . . .
> There is no reason to distinguish between a union bargaining away
> the right to strike and a union bargaining for the right to arbitrate.
> The right to arbitrate is a term or condition of employment, and as
> such, the union may bargain for this right.

Id. at 883-85 (citations and footnote omitted). Thus, the Fourth Circuit found that the plaintiff

was bound by the compulsory arbitration clause in the collective-bargaining agreement, and

therefore the plaintiff was barred from bringing any federal Title VII or ADA claims.[9]

### E.   *PENNY v. UNITED PARCEL SERVICE* (SIXTH CIRCUIT, 1997)

In Penny v. United Parcel Service, the Sixth Circuit explicitly held that it does not follow

the Fourth Circuit's ruling in Austin. 128 F.3d 408 (6th Cir. 1997). In Penny, the Sixth Circuit

found that the court has jurisdiction to hear an employee's federal ADA claim, even though there

was a compulsory grievance/arbitration clause in the collective-bargaining agreement.[10] Id. The

Sixth Circuit stated that the "Gilmer Court did not overrule Gardner-Denver," and that Gardner-

Denver was controlling in this case. Id. at 412.

The Sixth Circuit stated that the Fourth Circuit's decision in Austin did "not inspire[]

many followers." Id. at 413. The Sixth Circuit explained that the following circuits have also

rejected the result and reasoning of the Fourth Circuit: Eleventh Circuit, Tenth Circuit, Eighth

Circuit, Seventh Circuit, and Second Circuit. Id. The Penny court explained that the other

---

[9]The Sixth Circuit, like most circuits, does not follow the Fourth Circuit, as explained in
Sections E-F.

[10]In Penny, the court ultimately granted summary judgment against the plaintiff, because
the court found that the plaintiff could not sustain his disability claim because he had not shown
the existence of a disability.

circuits, like the Sixth Circuit, did not find <u>Gilmer</u> and <u>Gardner-Denver</u> to be inconsistent because "although <u>Gilmer</u> permits an *individual* to waive his prerogative to pursue a statutory right in a judicial forum, that case does not alter <u>Gardner-Denver</u>'s holding that a labor union cannot make such a waiver prospectively on an individual's behalf." <u>Id.</u> In other words, the two Supreme Court cases control "different factual situations." <u>Id.</u>

Thus, the Sixth Circuit held that it had jurisdiction to hear the plaintiff's federal ADA claim, in spite of the defendant's assertion that the collective-bargaining agreement compels the arbitration of a federal claim. As such, "an employee whose only obligation to arbitrate is contained in a collective bargaining agreement retains the right to obtain a judicial determination of his rights under a statute such as the ADA." <u>Id.</u> at 414.

F.    ***WRIGHT v. UNIVERSAL MARITIME SERVICE CORP.* (U.S. SUPREME COURT, 1998)**

In <u>Wright v. Universal Maritime Service Corp.</u>, the United States Supreme Court unanimously ruled that a general arbitration clause in a collective-bargaining agreement did not restrict a longshoreman to the arbitration process for the litigation of his ADA allegations. 525 U.S. 70 (1998). The Supreme Court acknowledged that there is "some tension" between <u>Gardner-Denver</u> and <u>Gilmer</u> because "<u>Gardner-Denver</u> stated that 'an employee's rights under Title VII are not susceptible of prospective waiver,'" whereas "<u>Gilmer</u> held that the right to a federal judicial forum for an ADEA claim could be waived." <u>Id.</u> at 76-77. However, the Supreme Court explained that it was "unnecessary to resolve the question of the validity of a union-negotiated waiver [in a CBA], since it is apparent to us, on the facts and arguments presented here, that no such waiver has occurred." <u>Id.</u> at 77. Thus, the Supreme Court did not reach the issue of whether a grievance/arbitration clause in a collective-bargaining agreement

could bar a plaintiff's federal statutory rights.

However, the Supreme Court did discuss what *may* amount to an effective waiver of federal statutory rights. The <u>Wright</u> Court explained that "we think any CBA requirement to arbitrate [ ] must be particularly clear." <u>Id.</u> at 79. The Supreme Court further explained that "such a waiver must be clear and unmistakable."[11] <u>Id.</u> at 80. The Supreme Court stated that "<u>Gardner-Denver</u> at least stands for the proposition that the right to a federal judicial forum is of sufficient importance to be protected against [a] less-than-explicit union waiver in a CBA." <u>Id.</u>

In <u>Wright</u>, the Supreme Court found no "clear and unmistakable" waiver of individual federal statutory rights. The Supreme Court explained that the "arbitration clause is very general, providing for arbitration of '[m]atters under dispute.'" <u>Id.</u> Moreover, the Court found that "the remainder of the contract contains no explicit incorporation of statutory antidiscrimination requirements." <u>Id.</u> Furthermore, the collective-bargaining agreement stated that "no provision or part of this Agreement shall be violative of any Federal or State Law." <u>Id.</u> at 73. Thus, although no such waiver existed in this case, the Supreme Court seemed to suggest that a "clear and unmistakable" standard may apply to a waiver of federal rights in a compulsory grievance/arbitration clause in a collective-bargaining agreement.

## G.    <u>SIXTH CIRCUIT CASES AFTER *WRIGHT*</u>

The Sixth Circuit seems to have reaffirmed its position that an arbitration clause included in a collective-bargaining agreement does not deprive the district court of jurisdiction over an employee's federal statutory causes of action, in most instances. In <u>Bratten v. SSI Services, Inc.</u>,

---

[11]The Supreme Court stated that the "clear and unmistakable" standard did not apply in <u>Gilmer</u> because <u>Gilmer</u> "involved an individual's waiver of his own rights, rather than a union's waiver of the rights of represented employees." <u>Wright</u>, 525 U.S. at 80-81.

the Sixth Circuit again stated that it does not follow the Fourth Circuit's decision in <u>Austin</u>. 185

F.3d 625 (6th Cir. 1999). In fact, the Sixth Circuit stated that "[t]o the extent that other district

courts in our circuit have followed <u>Austin</u> in concluding that the union had effectively waived

the plaintiff's right to a judicial forum to vindicate statutory rights . . . those decisions are

overruled." <u>Id.</u> at 630 n.1. Moreover, the Sixth Circuit held that the Supreme Court's decision

in <u>Wright</u> "implicitly overruled <u>Austin</u>." <u>Id.</u> at 630. Thus, it is clear that the Sixth Circuit does

not follow <u>Austin</u>.

      Although the <u>Bratten</u> court noted that the Supreme Court (in <u>Wright</u>) did not rule on

whether a collective-bargaining agreement's "clear and unmistakable" waiver of federal

statutory rights would be enforceable, the <u>Bratten</u> court stated that there was no explicit waiver

in the case before it. In <u>Bratten</u>, the collective-bargaining agreement provided that it would

comply with Title VII and would not discriminate against employees. The collective-bargaining

agreement specifically mentioned Title VII and contained language very similar to the ADA.

The Sixth Circuit found that "including a provision in a collective bargaining agreement that

prevents discrimination against employees under a federal statute is not the same as requiring

union members to *arbitrate* such statutory claims." <u>Id.</u> at 631-32 (quotations and citation

omitted). Moreover, the language of compliance was in "a wholly separate provision from the

grievance resolution procedure." <u>Id.</u> at 631. In addition, the arbitration clause only stated "in

boilerplate fashion that '[a]ny grievance arising under the terms of this contract or an alleged

violation thereof shall be handled'" through the grievance procedures and arbitration. <u>Id.</u> The

Sixth Circuit, as the Supreme Court had found in <u>Wright</u>, considered this arbitration clause to be

"very general" and "could be understood to mean matters in dispute under the contract." <u>Id.</u>

(quotations and citation omitted). Thus, the Sixth Circuit reasoned that, even if a "clear and

16

unmistakable waiver" were enforceable, there was no such a waiver in this case.

The Sixth Circuit did opine that if a waiver *were* to be enforceable, that waiver would have to be crystal clear. For instance, the <u>Bratten</u> court explained that "under a 'clear and unmistakable' standard, the ADA and other statutory claims must be expressly recounted in the CBA." <u>Id.</u> The Sixth Circuit further explained that "post-<u>Wright</u> courts appear to be in agreement that a statute must specifically be mentioned in a CBA for it to even approach <u>Wright</u>'s 'clear and unmistakable' standard." <u>Id.</u>

In <u>Kennedy v. Superior Printing Co.</u>, the Sixth Circuit echoed its reasoning in <u>Bratten</u>. 215 F.3d 650 (6th Cir. 2000). The <u>Kennedy</u> court explained that a journeyman employee did not waive his right to file a federal cause of action, even though the employee was subject to a collective-bargaining agreement that contained an arbitration clause, and the employee had already voluntarily submitted his ADA discrimination claims to the grievance-and-arbitration procedures.[12] The <u>Kennedy</u> court explained that the collective-bargaining agreement only contained a general grievance/arbitration clause and "[n]owhere does the Agreement reference the ADA." <u>Kennedy</u>, 215 F.3d at 654. The <u>Kennedy</u> court stated, though, that "[a]n individual is permitted to waive his rights to a federal forum for federal statutory claims," which is the position established by <u>Gilmer</u>. <u>Id.</u> However, the <u>Kennedy</u> court stated that "[i]n order for such a waiver to be effective . . . it must be shown that the employee waived statutory rather than merely contractual rights." <u>Id.</u> This seems to suggest that the Sixth Circuit would enforce an arbitration clause waiving an employee's federal statutory rights in a collective-bargaining agreement, as long as that waiver was "clear and unmistakable."

---

[12]In <u>Kennedy</u>, the Sixth Circuit ultimately affirmed the district court's order of summary judgment against plaintiff, because the plaintiff failed to establish an ADA violation.

In Kennedy, the Sixth Circuit found that there was no such waiver.  The court explained that "it is not clear that Kennedy agreed to waive his right to a federal forum for his ADA claim."  Id. at 655.  The court stated that there is no presumption of arbitrability regarding an employee's federal statutory rights.  Id.  Moreover, the Sixth Circuit stated that the burden is on the employer to show that the employee "waived his *statutory* rights, not merely that he arbitrated a discrimination claim under a collective bargaining agreement that also had a basis in federal law."  Id.  The Kennedy court found that the employer had not met its burden because "[t]here was no written agreement providing that Kennedy would submit his ADA statutory claims to binding arbitration."  Id.  Also, the court found that it was unclear what law would be used by the arbitrator because the collective-bargaining agreement did not "explicitly incorporate external law to define the anti-discrimination provision."  Id.  Thus, the Sixth Circuit found that the plaintiff had not waived his federal statutory right to file an ADA claim in federal court.

In Mitchell v. Chapman, a postal employee filed a federal lawsuit against his employer for alleged violations of the ADA.  343 F.3d 811 (6th Cir. 2003).  The district court granted summary judgment in favor of the employer.  Next, Mitchell and his employer settled his previously filed grievance.  Afterwards, Mitchell filed another federal lawsuit that alleged violations of the ADA, Title VII, Section 1983, and FMLA.  The Sixth Circuit ruled that the FMLA claim, among others, should have been litigated in the first federal lawsuit because of claim preclusion.[13]  Mitchell explained that he did not assert an FMLA claim in his first federal lawsuit because he thought that such a claim was the subject of the grievance/arbitration

---

[13]While the court reasoned that claim preclusion barred plaintiff's cause of action against his employer and other defendants in their official capacities, the court found that claim preclusion did not bar the claims against the defendants in their individual capacities.  Mitchell, 343 F.3d at 824-25.

18

procedures of the collective-bargaining agreement.  The Sixth Circuit did not find Mitchell's explanation to be convincing because he did not cite "any provision of the CBA requiring him to submit FMLA claims to binding arbitration." Id. at 824.  However, the Mitchell court opined that if the "CBA mandates binding arbitration, it is well-established that the CBA must contain a 'clear and unmistakable waiver' of Mitchell's FMLA rights to foreclose his entitlement to a judicial forum." Id.  However, the Court states that there was no such explicit waiver of his statutory rights in this case.

In sum, these three Sixth Circuit cases seem to suggest that a collective-bargaining agreement *may* waive an employee's federal statutory rights, as long as the waiver is "clear and unmistakable."  However, the Supreme Court has directly stated that it has not considered the issue of such enforceability.  It also should be noted that, regardless of the explicit nature of the grievance/arbitration clause, there are still the concerns raised in Gardner-Denver, where the Supreme Court ruled that a union cannot collectively waive an employee's individual statutory rights to bring a claim in a federal judicial forum.

**III.   CONCLUSION**

For the reasons stated above, the Court will deny Defendant's Motion to Dismiss.

First, Gardner-Denver remains good law.  The Gardner-Denver Court explained that a union cannot collectively waive an individual's federal statutory rights in a collective-bargaining agreement.  The Supreme Court explained that collective contractual rights can mirror individual federal statutory rights, but one does not extinguish or preclude the other, as they both have independent legal bases.  An employee has *contractual rights* under the collective-bargaining agreement and *statutory rights* under federal law.  Although the Gilmer Court found that federal statutory claims can be barred when an employee has voluntarily submitted to a binding

19

arbitration clause, that case did not involve a collective-bargaining agreement.

Second, the Supreme Court (in <u>Wright</u>) and the Sixth Circuit seem to suggest that a "clear and unmistakable" waiver of federal statutory rights in a collective-bargaining agreement *may* be enforceable. The Supreme Court has not yet ruled on this issue. However, the Supreme Court and the Sixth Circuit have provided some of the requirements for such a waiver, if it were to be enforceable. The waiver would have to explicitly state that an employee was waiving his federal statutory rights. The waiver would have to specifically incorporate the federal statutory rights. The burden to prove such a "clear and unmistakable" waiver is on the defendant employer. Moreover, the Sixth Circuit has explained that a collective-bargaining agreement that merely tracks the language of a federal statute, or references a federal statute, is not the same as explicitly waiving an individual's federal statutory rights.

In the case at hand, a section of the CBA closely tracks the language of the FMLA. In fact, the section's title specifically refers to the FMLA. However, the grievance/arbitration clause is general and broad. It refers to disputes about the interpretation of the CBA, but it does not expressly waive an employee's FMLA federal statutory rights, or any other federal statutory rights. Also, the FMLA language is in a different section of the CBA than the binding grievance/arbitration clause. Thus, even if the Court were to find that a collective-bargaining agreement's "clear and unmistakable" waiver is enforceable, the CBA in this case would not satisfy the "clear and unmistakable" standard.

Lastly, the parties cite to cases that mostly involve federal statutory rights such as Title VII, ADA, and ADEA. Although Defendant raises the issue that the FMLA should not be treated the same as these federal rights of nondiscrimination, such a distinction is insignificant. The cases refer to federal statutory rights, which were vested in individuals by Congress. The

20

source of each of these rights is the same—the federal government.  Thus, it matters not whether the statutory right protects race, disability, or leave time; they are all implemented to protect the individual.

Accordingly,

IT IS ORDERED that Defendant's Motion to Dismiss is denied.

_____s/Bernard A. Friedman_____
BERNARD A. FRIEDMAN
CHIEF UNITED STATES DISTRICT JUDGE

Dated: January 18, 2007
        Detroit, Michigan

**I hereby certify that a copy of the foregoing document was served this date upon counsel of record electronically and/or via first-class mail.**

_____**/s/ Patricia Foster Hommel**_____
        **Patricia Foster Hommel**
        **Secretary to Chief Judge Friedman**